**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GABRIEL JARVIS, | ) CASE NO. 4:25-CV-01240-JRA |
| | ) |
| Plaintiff, | ) JUDGE JOHN R. ADAMS |
| | ) UNITED STATES DISTRICT JUDGE |
| v. | ) |
| | ) MAGISTRATE JUDGE |
| WARDEN ANTHONY DAVIS; | ) CARMEN E. HENDERSON |
| | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendants, | ) |

## I.      Introduction

Gabriel Jarvis ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2023 convictions for rape and child endangering, for which he is serving a life sentence without parole.   This matter was referred to the undersigned under Local Rule 72.2 to prepare a report and recommendation on Petitioner's petition.   For the reasons set forth below, the undersigned recommends that the Court deny the petition in its entirety and not grant Petitioner a certificate of appealability.

## II.      Factual Background and Trial Court Proceedings

The Ohio Court of Appeals for the Fifth Appellate District set forth the following facts[1] on direct appeal:

> {¶2} On October 13, 2022, a Stark County grand jury indicted the appellant on one count of Rape in violation of R.C. § 2907.02(A)(1)(b) and one count of Endangering Children R.C. §

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

2919.22(B)(1). The next day, the appellant pled not guilty to both charges.

{¶3} On November 1, 2022, the defendant filed a Motion for Incompetency Examination.

{¶4} On January 13, 2023, the trial court admitted a report addressing the competency of the appellant and was stipulated to by both parties.

{¶5} On January 24, 2023, the appellant was found to be competent to stand trial.

{¶6} On February 17, 2023, the appellant filed a Motion to Suppress, asking the trial court to suppress statements the appellant made to police officers.

{¶7} On March 1, 2023, the State filed a Response to the appellant's Motion to Suppress.

{¶8} On March 2, 2023, the trial court held a hearing on the appellant's motion to suppress.

{¶9} At the suppression hearing, Detective Romanin testified he was part of the investigative team that received a report of suspected child abuse of a four-month-old, V.J., in September of 2022. In connection with that investigation, Detective Sedares interviewed the appellant on September 20, 2022. The appellant terminated that interview because he wanted to be done talking to the detective.

{¶10} On September 22, 2022, detectives, with the assistance of the Canton SWAT team, executed a search warrant on the appellant's home. The appellant was detained with zip cuffs and then transported to the detective bureau. The detective testified that the appellant was in custody and mirandized when interviewed.

{¶11} During the interview, the appellant indicated he has a high school education with some college. He did not appear intoxicated or on drugs or alcohol. The appellant chose to speak with police about the allegations of sexual abuse against the victim. The appellant discussed the abuse by his father. Detective Romanin said the appellant was upset at the beginning of the interview but became more comfortable. Throughout the course of the interview, the appellant confessed to the rape of V.J., his child. A video of the interview was submitted into evidence.

{¶12} Next, the appellant testified that about twenty officers showed up to execute a search warrant. He said he was terrified when they came into his home. They took him to the police department for an interview. He said he was scared and upset during the interview. The appellant said he brought up his father's abuse because he understands what abuse does, and that is not who he is. He then said that he does not recall confessing to raping the victim and that everything went blank in the interview. The appellant also testified that he has been interviewed by police in the past, most recently two days prior with Detective Sedares.

{¶13} On March 10, 2023, the trial court denied the appellant's Motion to Suppress.

{¶14} On March 14, 2023, the matter proceeded to a jury trial.

{¶15} First, Kami Morris testified that she works as an intake worker at Stark County Job and Family Services ("the Agency"). In September of 2022, the Agency received concerns as the appellant's four-month-old child was seen medically for having an anal tear. The appellant blamed this on a large bowel movement. The doctor had doubts that this was an accurate statement and that the child could be the victim of abuse.

{¶16} At the time the Agency became involved, the appellant was living with V.J. and V.J.'s mother. Ms. Morris made an unannounced visit to check on V.J. During the visit, the appellant stated that he woke up to V.J. crying, and during a diaper change, V.J. had a large bowel movement, which caused bleeding. He was alone with V.J. at the time, but waited until V.J.'s mother returned home from work before seeking medical attention. During the interview, he stated he did not like being alone with V.J. because he didn't want to be accused of anything or do anything wrong to her. The appellant brought V.J. to Ms. Morris but refused to allow Ms. Morris to enter the residence. While at the appellant's residence, Ms. Morris informed the appellant she would be setting up a medical appointment for V.J. at Children's Network.

{¶17} After the appointment, the attending nurse reviewed the findings with Ms. Morris. Ms. Morris communicated those concerns with V.J.'s mother and worked together to set up a safety plan. V.J. was transported to Children's Hospital and had to have surgery. She was informed that the severity of the injury was not consistent with that of a large bowel movement.

3

{¶18} Next, Detective Sedares testified that he is the Juvenile Sex Crimes Investigator for the Detective Bureau. On September 20, 2022, he was assigned to investigate the suspected child abuse of V.J. After speaking with the medical personnel, Detective Sedares said the victim had significant tearing in her anus, which needed to be surgically repaired.

{¶19} Detective Sedares then went to the appellant's home and asked that the appellant return to the police station and speak with him. The appellant agreed. Detective Sedares did not read the appellant his *Miranda* rights and told the appellant he was free to leave at any time. The appellant then told the detective the story of V.J. having a very large, hard bowel movement, and that is what tore her anus. Detective Sedares noted that he did not find the appellant credible. He asked the appellant if he pressed too hard on V.J. while cleaning her causing the tear, or if he did it on purpose. The detective said that this is the only explanation for what occurred. At this point, the appellant ended the interview.

{¶20} Detective Sedares then testified a rape kit was complete for V.J., and no DNA foreign to V.J. was found. Detective Sedares then obtained a search warrant for the appellant's home to attempt to find V.J.'s diapers to see if they contained any foreign DNA. The SWAT team executed the search warrant on the appellant's residence. The police recovered two bloody wipes, three diapers, and some electronics. Law-enforcement officers recovered no diapers with large bowel movements. Neither the diapers nor wipes were sent out for scientific testing because the appellant confessed.

{¶21} Next, Alissa Edgein testified that she is employed as a nurse practitioner at Akron Children's Hospital. On September 19, 2022, Nurse Edgein treated V.J. for a rectal injury and concerns of constipation. She further explained that a child suffering from constipation may experience a small, superficial tear in the anus similar to a paper cut. V.J.'s mother had told Nurse Edgein that the day before V.J. had a good day. On Saturday morning, when V.J.'s mother went to change her diaper, she saw a large stool and blood. V.J. had minor issues with constipation until she was two months old, but then she outgrew it.

{¶22} After gathering V.J.'s medical history from V.J.'s mother, Nurse Edgein performed a medical evaluation and physical examination of V.J. Nurse Edgein noticed V.J. had a diaper rash and some fissures at the corners of her mouth V.J. She also noted that V.J. had a one-inch laceration on the anus and several small fissures

on the anus. Nurse Edgein said the laceration and fissures are not consistent with a large stool.

{¶23} After the physical examination, Nurse Edgein spoke with V.J.'s mother and the caseworker. She said this is not the type of fissure they see with a large stool. V.J.'s mother then changed her story to say that she was actually not home when it occurred, but V.J. was with the appellant. Nurse Edgein determined it was inconclusive if V.J. had experienced sexual abuse. As V.J. was not old enough to say what happened and V.J.'s mother had been telling untruths since she arrived, she could not make that diagnosis with a reasonable degree of medical certainty.

{¶24} Next Dr. Paul McPherson testified that he is the medical director for the child abuse clinics at Akron Children's Hospital. He became involved with V.J. on September 19, 2022. Nurse Edgein called and asked him to look at some pictures of V.J.'s anal region and provided him with a history of the information she received from V.J.'s mother. Upon reviewing the photos, Dr. McPherson said he was surprised at the extensive nature of the injuries. That these injuries are not consistent with hard or large stool. He recommended V.J. been seen further as he was worried about current infection, future infection, the anus being able to function properly with such a laceration, and that the laceration required surgical closure.

{¶25} Dr. McPherson testified that V.J.'s injuries were more consistent with penetrative trauma rather than an anal fissure from a large, hard bowel movement. The laceration went beyond the outer layer of skin; it went through the subcutaneous tissue and into the muscle. Dr. McPherson concluded within a reasonable degree of medical certainty that a penetrating trauma to the anal region consistent with child sexual abuse caused V.J.'s injuries. These injuries were not consistent with the passage of a hard stool.

{¶26} Next, Detective Vincent Romanin testified he is a detective with the City of Canton Police Department investigating child abuse cases, including sexual abuse. On September 22, 2022, Detective Romanin interviewed the appellant after he was taken into custody. While in custody, the appellant agreed to speak with Detective Romanin after being read his constitutional rights. The interview lasted about an hour and twenty minutes. The State played portions of the video recording of the interview at trial.

{¶27} During the interview, the appellant told Detective Romanin that he put his thumb in the victim's anus and demonstrated what he did. He then explained how he lifted the leg of his shorts to expose

5

his penis. He then admitted the injuries to the victim were caused by the appellant inserting his penis into the victim's anus. He confessed that the abuse went on for five minutes. The appellant also went into detail about how his father sexually assaulted him when he was a child.

{¶28} On cross-examination, Detective Romanin testified that the appellant was initially scared, a search warrant had been executed on his house by a SWAT team, and he was placed in restraints. During the interview, Detective Romanin challenged the appellant's story, informing him that V.J.'s injuries were not caused by a hard bowel movement.

{¶29} After Detective Romanin testified, the State rested its case.

{¶30} The appellant moved for acquittal based upon Crim.R. 29 which the trial court overruled.

{¶31} On March 16, 2023, the jury convicted the appellant guilty of Rape in violation of R.C. § 2907.02(A)(1)(b) and Endangering Children R.C. § 2919.22(B)(1).

(ECF No. 7-1, PageID #: 168-74). The trial court sentenced Petitioner to life imprisonment without the possibility of parole. (*Id.* at PageID #: 91-94).

## III. Subsequent State Procedural History

### A. Direct Appeal

Jarvis filed a notice of appeal to the Fifth Appellate District on April 21, 2023. (ECF No. 7-1 at PageID #: 95). Jarvis raised two assignments of error on appeal:

(1) The trial court erred in not granting the appellant's motion to suppress.

(2) Appellant's convictions were against the manifest weight and sufficiency of the evidence.

(*Id.* at PageID #: 96-118). The State filed an opposition brief. (*Id.* at PageID #: 131-66). On February 13, 2024, the state appellate court overruled Jarvis's assignments of error and affirmed the trial court's judgment. (*Id.* at PageID #: 167-86).

6

**B. Motion for Delayed Appeal to the Ohio Supreme Court**

On November 19, 2024, Jarvis filed a motion for leave to file a delayed appeal in the Ohio Supreme Court. (ECF No. 7-1 at PageID #: 188-92). Jarvis represented that he attempted to file his notice of appeal and memorandum in support of jurisdiction in March 2024, but it was returned because it did not have a copy of the appellate court's judgment and Jarvis did not receive a copy of the judgment until October 17, 2024. (*Id.* at PageID #: 190, 192). In his motion, Jarvis included two proposed propositions of law he would raise if allowed a delayed appeal:

> (1) The trial court erred in not granting Appellant's Motion to Suppress, in violation of his Fifth Amendment protection against self-incrimination and his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.
>
> (2) Appellant's convictions were against the manifest weight and sufficiency of the evidence, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section § 10 of the Ohio Constitution.

(*Id.* at PageID #: 190). The Ohio Supreme Court denied Jarvis's motion for delayed appeal on January 28, 2025. (*Id.* at PageID #: 216).

**IV. Federal Habeas Corpus Petition**

Petitioner, acting *pro se*, filed the instant petition on or about June 12, 2025, raising the following grounds for relief:

> 1. The Supreme Court of Ohio violated Petitioner's Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution when it denied his Motion for Leave to File a Delayed Appeal.
>
> 2. The trial court erred in not granting Petitioner's Motion to Suppress, in violation of the Fifth Amendment protection against

7

self-incrimination and his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

3. Petitioner's convictions were against the manifest weight and sufficiency of the evidence, in violation of his Due Process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution.

(ECF No. 1 at 4-7). Respondent filed his Return of Writ on November 21, 2025, arguing Petitioner's first ground for relief is not cognizable on federal habeas review, and his second and third grounds for relief are procedurally defaulted and meritless. (ECF No. 7). Petitioner filed his traverse on or about February 26, 2026. (ECF No. 10).

## V.    Legal Standards

Because Petitioner is a state prisoner seeking federal habeas relief, his petition is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), and corresponding case law.

### A.  Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in the application of state law … are usually not cognizable in federal habeas courts." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir.

8

1987)).  Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

### B.  Exhaustion

Under 28 U.S.C. § 2254(b), a state prisoner seeking federal habeas relief must exhaust "the remedies available in the courts of the State" or show that (1) there is an absence of available State corrective process or (2) circumstances exist that render such process ineffective to protect the prisoner's rights.  "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.  However, when a petitioner fails to exhaust all of his state law remedies but can no longer do so under state law, the claim becomes procedurally defaulted. *Id.* at 848.

### C.  Procedural Default

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by the state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-84 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  When

a state court declines to address a prisoner's federal claims because the petitioner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id.* at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "ordinary appellate review procedures," and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' … it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. Under this test, cause "must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

### D. AEDPA Standard of Review

Turning to claims addressed on the merits in state court proceedings, 28 U.S.C. § 2254(d) provides that federal habeas relief shall not be granted unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision

only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

## VI.     Discussion

Respondent argues each of Petitioner's grounds for relief are not cognizable, procedurally

defaulted, and/or meritless such that the petition should be dismissed.

### A. Ground One-Not Cognizable

In his first ground for relief, Petitioner argues the Ohio Supreme Court violated his Due Process protections when it denied his motion for a delayed appeal. (ECF No. 1 at 4). Respondent argues this claim is not cognizable on federal habeas review because it "does not dispute his underlying conviction or detention" and this Court "cannot interfere with the Ohio courts' interpretation and application of its own rules of procedure." (ECF No. 7 at 19). Petitioner replies that "[w]hile Ground One might not present a basis for the ultimate habeas relief sought in Grounds Two and Three, Ground One does present a constitutional claim and has direct relevance as to whether or not Petitioner has showed sufficient 'cause and prejudice' to overcome the procedural default" created by the denial of his delayed appeal. (ECF No. 10 at 2). He argues that "it was *fundamentally unfair* for the Supreme Court to deny Petitioner a delayed appeal, which violated his due process protections under the Fourteenth Amendment." (*Id.* at 5).

The undersigned agrees with Respondent that Petitioner's ground one does not challenge his conviction and challenges only a state procedural ruling such that it is not cognizable on federal review. Federal habeas relief is only warranted on claims that a petitioner "is in custody in violation of the Constitution or laws or tries of the United States." 28 U.S.C. § 2254(a); *see Estelle*, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotations omitted)). Here, Petitioner's challenge to the Ohio Supreme Court's denial of his motion to file a delayed appeal does not address whether the underlying *conviction* violated the Constitution or federal law. *Estelle*, 502 U.S. at 68. Further, such a motion clearly raises a state law issue. Accordingly, ground one is not cognizable and should be dismissed.[2]

---

[2] However, the undersigned will consider Petitioner's arguments in support of ground one in addressing the procedural default of grounds two and three.

**B. Grounds Two and Three-Procedural Default**

In his second ground for relief, Petitioner asserts that the trial court erred in not granting his motion to suppress his confession. (ECF No. 1 at 6). In ground three, Petitioner argues his convictions were against the manifest weight and sufficiency of the evidence because "Nurse Edgein determined that sexual abuse was 'inconclusive' as to VJ's injuries" and there was no DNA testing conducted to support that Petitioner abused VJ.  (*Id.* at 7).

Before addressing the merits of these grounds, Respondent argues these claims "involve constitutional issues that occurred prior to or during his trial" such that "they should have been raised as a federal constitutional violations [sic] in direct review" but Jarvis "failed to perfect a timely discretionary appeal to the Ohio Supreme court" such that these claims are now procedurally defaulted.  (ECF No. 7 at 11-12).  Respondent further argues that Jarvis has not shown cause, prejudice, or a miscarriage of justice to overcome the default because while Jarvis asserts he did not receive a copy of the appellate court's judgment, he "has failed to explain his utter lack of any diligence in the seven months from when he first states he wrote [to the court to obtain such] and did not hear back from the clerk" and he has not provided any new evidence to support that he is actually innocent.  (*Id.* at 12-16).

In his traverse, Petitioner recognizes Respondent's position that grounds two and three are procedurally defaulted but asks the Court to consider his arguments in support of ground one in determining whether cause and prejudice exist. (ECF No. 10 at 1-2). Petitioner asserts that he received a copy of the state appellate court's opinion without an accompanying judgment, and as a result, Petitioner's timely notice of appeal to the Ohio Supreme Court was returned for failing to include a copy of the judgment. (*Id.* at 3-4). He argues that because in some instances Ohio appellate courts combine the opinion and judgment in a single document while in other cases they

are two separate documents, "even a seasoned attorney might overlook whether the opinion of the appellate court was separate from or combined with the judgment entry" such that he should not be penalized for any error. (*Id.* at 3). Petitioner asserts that after he received the returned notice of appeal on March 29, 2024, he sent a letter to the appellate court requesting a copy of the judgment but did not receive a response and a copy of the judgment until he sent a second letter "[s]ome months later" on October 7, 2024. (*Id.* at 4). Petitioner argues he "should not have had to send out even one letter, and should not be faulted for however long he took before sending out the second letter" and he would have faced an undue financial burden if required to keep sending letters to the appellate court to obtain a copy of the judgment. (*Id.* at 5-6).

Here, there can be no genuine dispute that because the Ohio Supreme Court denied Petitioner's motion for delayed appeal, he failed to properly present his claims to every level of the state court such that they are procedurally defaulted. The reason why the motion was denied is irrelevant because under Sixth Circuit precedent, the Ohio Supreme Court's denial of a motion for leave to file a delayed appeal—even where such is unexplained—is a procedural ruling sufficient to justify a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Thus, the question becomes whether Petitioner has shown cause and prejudice to overcome the procedural default.[3]

Petitioner points to the failure of the appellate court to timely provide him with a copy of the judgment. Even if the Court determines such amounts to cause, Petitioner has still failed to show prejudice because after sending his initial letter to the appellate court requesting a copy of the judgment, he waited approximately six months before taking any further action. *See Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 435–36 (6th Cir. 2006) (where petitioner

---

[3] Petitioner does not advance a "fundamental miscarriage of justice" argument and, to the extent he did, he has not presented any argument or evidence that he is actually innocent in support of such. *Willaims*, 380 F.3d at 973.

16

alleged he did not receive notice of appellate decision, he could not establish prejudice because "he did not take action to appeal the decision until … approximately five months after learning of the decision"). Thus, grounds two and three are procedurally defaulted and should be dismissed.

## C. Grounds Two and Three-Merits Analysis

Alternatively, even if grounds two and three were not procedurally defaulted, they otherwise fail on the merits.

### 1. Ground Two

In his second ground for relief, Petitioner asserts that the trial court erred in not granting his motion to suppress his confession. (ECF No. 1 at 6). Respondent argues ground two fails on the merits because the state appellate court reviewed this claim under the appropriate United States Supreme Court precedent and its rejection of this claim was neither contrary to, or an unreasonable application of, Supreme Court precedent nor was it based on an unreasonable determination of the facts such that it is entitled to AEDPA deference. (ECF No. 7 at 20-27).

Petitioner argues that his confession was coerced and therefore involuntary. (ECF No. 10 at 11-17). He challenges the trial court's conclusion that he was not subjected to any threats, pointing to Romanin's statement that if Petitioner did not change his story regarding the cause of the injuries, Petitioner would not like the outcome. (*Id.* at 17). Petitioner further argues that the appellate court wholly failed to consider Romanin's threat in reaching its decision. (*Id.* at 18). Citing Romanin's alleged threat, Petitioner argues the state court's decision was contrary to *Brady v. United States*, 397 U.S. 742, 753 (1970) and was also based on an unreasonable determination of the facts. (*Id.* at 19).

#### a. Relevant Law

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life liberty, or property, without

17

due process of law." U.S. Const. amend. XIV. "[C]ertain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." *Miller v. Fenton,* 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). In order to determine whether a confession was voluntarily made, a court must evaluate the totality of the circumstances surrounding the interrogation to determine whether the defendant's "will [was] overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "[C]oercion can be mental as well as physical." *Blackburn v. Alabama,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). In addition to "the crucial element of police coercion," courts consider "the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health" and the failure of police to advise the defendant of his *Miranda* rights. *Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (internal citations omitted); *see also Schneckloth,* 412 U.S. at 226, 93 S.Ct. 2041 (discussing factors). If a defendant has been advised of his *Miranda* rights and voluntarily waived them, it will be difficult to claim that his confession was nonetheless involuntary. *Missouri v. Seibert,* 542 U.S. 600, 609, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion) (noting that "maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina"); *see also Berkemer,* 468 U.S. at 433 n. 20, 104 S.Ct. 3138 ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare.").

*Loza v. Mitchell*, 766 F.3d 466, 477–78 (6th Cir. 2014).

### b. State Court Proceedings

The trial court held a hearing on Petitioner's motion to suppress his confession. Detective Romanin testified that he did not threaten or make any promises to Petitioner to get him to talk to him but rather was trying to build a rapport with him throughout the questioning. (ECF No. 8-1, PageID #: 246-47). Romanin further testified that Petitioner "seemed to be very comfortable" and

18

they "engaged in a very amicable type conversation." (*Id.* at PageID #: 249). On cross examination, Romanin confirmed that he told Petitioner that he could "stick with his story" that the injuries were caused by a large bowel movement but "he wasn't going to like the outcome," and Petitioner became upset after this exchange. (*Id.* at PageID #: 256-57). Additionally, Romanin confirmed that he told Petitioner "the only way he's ever going to get over this stuff is if he [told him] something other than what he'[d] already told [him]." (*Id.* at PageID #: 257). After Romanin's testimony concluded, Petitioner testified that Romanin calling him a liar scared him and reminded him of his abusive father, causing him to black out and not remember the subsequent confession.  (*Id.* at PageID #: 274-75).

Defense counsel argued that Romanin's statement that if Petitioner stuck to his story, he would not like the outcome was "fairly threatening coming from a police officer to a young suspect, especially one who ha[d] just been arrested by the SWAT team."  (ECF No. 8-1, PageID #: 280). In denying the motion to suppress, the trial court explicitly rejected this argument, explaining:

> While Detective Romanin explained the benefits of telling the truth and that he wanted to get the defendant help, there were no promises of leniency made during the interview.  The Court does not find that Detective Romanin's statement that, if the defendant continued with his story that the victim's injuries were the result of a "hard poop," "I promise, you are not going to like the outcome" constitutes a threat or promise of lenient treatment. Rather, the Court finds that Detective Romanin explained the benefits to the defendant of telling the truth, both as it relates to the investigation and his personal relationships and healing. The Court also finds that Detective Romanin was honest with the defendant and informed him that he could still go to jail even if he told the truth.

(ECF No. 7-1, PageID #: 86-87).

Petitioner challenged the denial of the suppression motion on appeal.  The state appellate court provided the following analysis:

19

{¶38} In the case *sub judice*, the appellant argues that the trial court should have suppressed his statements because they were not voluntary. The appellant, who undisputedly was in custody and was advised of his *Miranda* rights, was coerced into confessing by the circumstances and tactics used by law enforcement. The appellant does not contest the trial court's findings of fact but whether the trial court misapplied the law to the facts.

{¶39} To use a statement made by the accused during a custodial interrogation, the prosecution must show: "(1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976) (overruled on other grounds), citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶40} The appellant claims he did not voluntarily waive his *Miranda* rights and that law enforcement coerced his confession during the interrogation.

{¶41} In *State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶¶34-35, the Supreme Court of Ohio set forth the following test:

> When a suspect is questioned in a custodial setting, the Fifth Amendment requires that he receives *Miranda* warnings to protect against compelled self-incrimination. *Miranda* at 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694. A suspect may then knowingly and intelligently waive these rights and agree to make a statement. *Id.* at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. See *Id.* at 475, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Colorado v. Connelly*, 479 U.S. 157, 168-169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

> To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus; *see also Arizona v. Fulminante*, 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302

20

(1991). We have held that a waiver is not involuntary unless there is evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep. *State v. Cooey*, 46 Ohio St.3d 20, 28, 544 N.E.2d 895 (1989).

{¶42} In the case *sub judice*, Detective Romanin ascertained that the appellant had graduated high school and had some college education, he is able to read, write, and understand the English language, the appellant did not appear to be intoxicated or drug impaired, the appellant is twenty-one years old, and had previous experience with the criminal justice system. Detective Romanin thoroughly read each right and explained in detail what each right meant, including the appellant's ability to revoke the waiver at any time and end the interview. The appellant is familiar with the criminal justice system indicating he has been read his rights before as well. The trial court found that neither his alleged intellectual deficiency nor his dyslexia prevented him from understanding Detective Romanin. The appellant was not threatened or promised anything to waive his *Miranda* rights. The trial court considered the totality of the circumstance and found the appellant knowingly, voluntarily, and intellectually waived his *Miranda* rights.

{¶43} Next, the appellant argues that law-enforcement officers coerced his confession after he waived his *Miranda* rights.

{¶44} The Supreme Court defined "coercion" in *State v. Belton*,

This court may find coercion when law-enforcement officers "persuad[e] or deceiv[e] the accused, with false promises or information, into relinquishing his rights and responding to questions." *Edwards*, 49 Ohio St.2d at 39, 358 N.E.2d 1051. However, "the presence of promises does not as a matter of law, render a confession involuntary." *Id.* at 41, 358 N.E.2d 1051. Officers may discuss the advantages of telling the truth, advise suspects that cooperation will be considered, or even suggest that a court may be lenient with a truthful defendant. *Id.* And "[a]dmonitions to tell the truth are considered to be neither threats nor promises." *State v. Loza*, 71 Ohio St.3d 61, 67, 641 N.E.2d 1082 (1994); *see also State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶29.

149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶111.

{¶45} Furthermore, a law-enforcement officer's assertion that the suspect is lying does not automatically render a confession

involuntary. *State v. Knight*, 2d Dist. Clark No. 04-CA-35, 2008-Ohio-4926, ¶111.

{¶46} In the case *sub judice*, Detective Romanin conducted the interview in a calm and comfortable manner, even as admitted by the appellant. Detective Romanin was the only law-enforcement officer present during the interview, and the appellant was not subject to mistreatment or physical deprivation. The interview lasted about one hour and twenty minutes and was not overly lengthy, intense or too frequent. The appellant was twenty-one years old, graduated high school with some college education, and had previous experience with law enforcement. Although the appellant says he has dyslexia and suffers from an intellectual deficit, it did not appear to hamper his understanding of what was happening. The discussion of the appellant's former abuse and Detective Romanin's suggestion that he be a better man than his father when discussing the advantages of telling the truth was not a threat or inducement.

{¶47} The record does not support the appellant's allegation of coercion by law enforcement. Under the totality of the circumstances, the record supports the trial court's conclusion that the appellant knowingly, intelligently and voluntarily waiver [sic] his *Miranda* rights and his statements to law-enforcement were made voluntarily.

{¶48} Accordingly, the appellant's first Assignment of Error is overruled.

(ECF No. 7-1, PageID #: 175-79).

###### c.  Analysis

To satisfy the AEDPA standard, Petitioner must show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). Petitioner fails to satisfy this standard. Although the state appellate court cited primarily state case law, it set forth and applied the correct federal standard and looked at the totality of the circumstances when determining that Petitioner's confession was not coerced. *See Loza*, 766 F.3d at 477-78. Petitioner essentially argues that the facts before the trial court could

have been weighed differently to support a finding that Romanin's statement amounted to a threat. (*See* ECF No. 10 at 13-18). However, based on a review of the record, the state court's factual determination that Romanin did not threaten Petitioner was not unreasonable. Accordingly, Petitioner has not shown that the state court decision is contrary to, or based on an unreasonable application of, federal law or that it was based on an unreasonable determination of the facts. *Loza*, 766 F.3d at 480. As such, Petitioner should be denied relief on ground two

## 2. Ground Three

In his third ground for relief, Petitioner argues his convictions were against the manifest weight and sufficiency of the evidence because "Nurse Edgein determined that sexual abuse was 'inconclusive' as to VJ's injuries" and there was no DNA testing conducted to support that Petitioner abused VJ. (ECF No. 1 at 7). Respondent argues ground three was reasonably rejected by the state appellate court and that rejection is entitled to AEDPA deference and Petitioner's arguments misconstrue the testimony of the individuals who evaluated his daughter. (ECF No. 7 at 27-37). In his traverse, Petitioner highlights evidence he feels was insufficient to establish guilt. (ECF No. 10 at 23-27). He argues that the State "presented no physical evidence that Petitioner had engaged in sexual conduct with the alleged victim, his daughter V.J., and only one of the State's experts could state 'with a reasonable degree of medical certainty' that V.J.'s anal injury was the result of sexual abuse" but this opinion "was cancelled out by that of the State's other expert witness, who could not declare 'with a reasonable degree of medical certainty' that the injury was the result of sexual abuse." (*Id.* at 29).

### a. Relevant Law

When presented with a sufficiency of the evidence claim on federal habeas review, a court makes two relevant inquiries. First, the court considers "whether, after viewing the evidence in

23

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, the court does not reweigh the evidence, re-evaluate witness credibility, or substitute its judgment for that of the jury. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citations omitted). Even though the court may not have convicted the defendant if it were the trier of fact, it "must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.* Second, assuming the court concludes that no reasonable jury could have found the defendant guilty beyond a reasonable doubt, the court must still defer to the state appellate court's decision as long as it was not unreasonable. *Id.* (citing 28 U.S.C. § 2254(d)(2)).

      b.  *State Court Decision*

The state appellate court rejected Petitioner's sufficiency claim, providing the following analysis:

> {¶50} The appellant challenges his convictions on both manifest weight and sufficiency of the evidence grounds. Sufficiency of the evidence was addressed by the Supreme Court of Ohio in *State v. Woreley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶57:
>
>> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on grounds as state in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn.4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally

sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

{¶51} Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

…

{¶56} R.C. § 2907.02, in pertinent part, states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when the following applies:

* *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

* *

(B) Whoever violates this section is guilty of rape, a felony of the first degree. …

R.C. § 2919.22, in pertinent part, states:

(B) No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:

* *

(1) Abuse the child

(E)

* *

(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in circumstances described in (E)(2)(e) of this section, that division

25

applies:

* *

(d) If the violation is the violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree.

{¶57} In the case *sub judice*, the State produced testimony that V.J. was the daughter of the appellant, she was four months old at the time of her injury, and her injuries were so extensive that she needed surgery to repair the laceration on her anus. The testimony showed that while the appellant was alone with the child, V.J. suffered the injuries and that despite the appellant's story, the injuries were not caused by a large, hard bowel movement but were caused by a penetrating trauma to the anal region consistent with child sexual abuse. In addition, the appellant confessed to raping V.J. for five minutes.

{¶58} We find the State presented sufficient evidence, if believed by a jury, that the appellant raped the victim and endangered the victim. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. The appellant was not convicted against the manifest weight of the evidence.

{¶59} Accordingly, the appellant's second Assignment of Error is overruled.

(ECF No. 8-1, PageID #: 179-85).

   *c. Analysis*

Based on the above discussion of the law and relevant evidence, the undersigned cannot say that the state court unreasonably determined that there was sufficient evidence for a rational juror to convict Petitioner. Critically, Petitioner confessed to the crime after waiving his *Miranda* rights and, as discussed above, has not established that his confession was coerced. Petitioner argues "there is still the very real possibility that it was a 'false confession'" and that certain testimony from the various experts could be interpreted in a manner that would support his version of how the injuries occurred. (ECF No. 10 at 22-27). However, the jury was in the best position

26

to judge the credibility of the witnesses and determine whether Petitioner made a true confession. As such, his sufficiency of the evidence claim lacks merit and Petitioner should be denied relief on ground three.

## VII. Certificate of Appealability

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Here, Petitioner's grounds for relief are procedurally defaulted, non-cognizable, and/or meritless. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

## VIII. Recommendation

Petitioner has presented only procedurally defaulted, non-cognizable, and/or meritless claims. Thus, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

Dated: April 27, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).